UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                               )
PROVIDENCE METALLIZING CO.,     )
                               )
        Plaintiff,             )
                               )
    v.                         )    C.A. No. 09-450 S
                               )
TRISTAR PRODUCTS, INC., NEW     )
PRODUCTS INTERNATIONAL, INC.,   )
and BARUCH TAMIR, individually  )
and in his corporate capacity   )
as an officer of New Products   )
International, Inc.,            )
                               )
        Defendants.            )
_____)
```

OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

I.   Introduction

        Plaintiff, Providence Metallizing Co. ("PMC") filed suit

against Defendants, Tristar Products, Inc. ("Tristar"), New

Products International, Inc. ("New Products"), and Baruch Tamir

("Tamir") for breach of contract, breach of the implied covenant

of good faith and fair dealing, and promissory and equitable

estoppel.  PMC alleges that it struck a deal with Tamir, an

alleged agent of Tristar and New Products, to provide gold

plating and printing services on U.S. coins to commemorate

President Obama's inauguration and election.  Defendants,

according to PMC, reneged on the deal and hired another company instead.  Unhappy with this sleight of hand, PMC turned to the Court for redress.   For the reasons that follow, the Court denies Defendant's motion to dismiss.

II.  Factual and Procedural Background

On November 17, 2008, Tamir contacted Plaintiff's agent, Richard Sugerman, allegedly representing that he was an agent of Tristar and New Products.   Tamir claimed he was seeking metal finishing and plating services for an immediate rush order.   The next day Sugerman emailed Tamir a Price Quotation ("PQ") with a production schedule to run from November 24, 2008, to December 23, 2008.   The email noted that a five percent commission was added to the prices "as agreed."  (Pl.'s Am. Compl. Ex. 3 Doc. 17-3.)   The PQ also provided that "a commitment should be made by 5 PM today 11/18" and that "[s]ignature by customer constitutes agreement to the above."  (Pl.'s Am. Compl. Ex. 2 Doc. 17-2.)  Keith Mirchandani, a managing director and agent of Tristar, then called PMC on the telephone and confirmed receipt of the PQ.   Plaintiff also alleges that Mirchandani confirmed Tristar's intention to contract, and that Tamir would follow up. According to Plaintiff, Tamir accepted the contract.   On November 19th and 20th, Tamir and Sugerman exchanged more emails, which allegedly confirmed the contract.   Thereafter, in reliance of these exchanges, PMC alleges that it began to ready

its plant for production by securing necessary materials and incurring over 470 hours in labor costs.

On November 21, 2008, Tamir and Keith Mirchandani arrived at the PMC plant in Rhode Island to meet with Sugerman and to tour and observe the plant. During the tour, it appears that Sugerman continued to assume that a contract was in place and was not told otherwise. PMC further alleges that it was led to believe by Tamir and Mirchandani that a deal was made. PMC was later informed that Tristar would not be using its services.

Tristar initially moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).[1] Tristar argued that (1) the statute of frauds bars Plaintiff's claims; (2) no contract formed because there was no acceptance by Tamir; and (3) Plaintiff fails to state a claim for promissory and equitable estoppel.[2]

After oral arguments, the Court granted Plaintiff an opportunity to amend the complaint.[3] Plaintiff filed a First

---

[1] Both parties rely upon the emails exchanged by Tamir and Sugerman and the PQ, in the Motion and Opposition, as these documents were attached and incorporated into the First Amended Complaint.

[2] Tristar also noted that Plaintiff's claim for breach of good faith and fair dealing cannot survive if the Court concludes that there is no contract between the parties.

[3] Plaintiff also requested more time to conduct discovery. See Theta Prods., Inc. v. Zippo Mfg. Inc., 81 F. Supp. 2d 346, 350 (D.R.I. 1999) (where instead of answering the complaint, the

Amended Complaint and Defendant renewed its motion to dismiss with supplemental memoranda.   In its renewed motion, Tristar addressed choice of law concerns that the Court had raised by text order, repeated its original argument, and argued for the first time that any authority Tamir allegedly had was terminated because Tamir breached his fiduciary duty toward Tristar.   Tamir and New Products did not join in the motion.

III. Analysis

At this stage in the proceedings, the Court must accept as true the factual allegations in Plaintiff's First Amended Complaint and draw all reasonable inferences in its favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Leatherman v. Tarrant County N.I. & C. Unit, 507 U.S. 163, 164 (1993) and Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990) (overruled on other grounds by Educadores Puertorriqueños en Accion v. Hernández, 367 F.3d 61, 64 (1st Cir. 2004)).   A claim will survive a motion to dismiss when it "has facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   The First Amended Complaint must supply enough to push

corporation filed a motion to dismiss, "plaintiff must have an opportunity to obtain an admission from the defendant" that an oral contract existed).   Because the Court concludes that Defendant's motion fails on the merits, it need not address this argument.

Plaintiff's claims past the "sheer possibility" threshold to actually probable or plausible. Iqbal, 129 S. Ct. at 1949-50.

The choice of law provisions of the forum state, Rhode Island, apply.[4] See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994). To the extent New York and Rhode Island law are consistent however, a choice of law analysis is unnecessary.[5] See Levin v. Dalva Brothers, Inc., 459 F.3d 68, 73-74 (1st Cir. 2006) (initial task is to determine whether an actual conflict exists).

After reviewing both New York and Rhode Island law, it appears there is no conflict with respect to the central issues, namely whether the statute of frauds applies to service contracts and/or what constitutes acceptance. See Theta Products, Inc. v. Zippo Mfg. Co., 81 F. Supp. 2d 346, 349

---

[4] In Rhode Island contract disputes, the Court should apply the law (1) where the contract was made or (2) the most appropriate state, which is determined by an "interest-weighing approach." Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 5 (1st Cir. 1994). The Rhode Island Supreme Court, however, has also noted, in dicta, that the law of the state where the contract is to be performed may be the appropriate law to govern the suit in some circumstances. Nortek, Inc. v. Molnar, 36 F. Supp. 2d 63, 66 (D.R.I. 1999) (citing to Matarese v. Calise, 305 A.2d 112, 118 n.4 (R.I. 1973)) ("[t]he Rhode Island Supreme Court has stated one caveat to the general rule where the contract was made in one location and intended to be performed in another")).

[5] Plaintiff alleges that Tamir is a New York resident and New Products is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 1 Alpine Court, Chestnut Ridge, New York.

(D.R.I. 1999) (Pennsylvania and Rhode Island both adopted the UCC and there are no substantive differences in contract law, therefore, no choice of law analysis is necessary).  Moreover, any difference on the other issues are minor and of little consequence at this stage, and until it is established that a contract actually formed.  Therefore, the Court is satisfied that no choice of law analysis is necessary at this time and will simply refer to Rhode Island law.

A.   Statute of Frauds

As a threshold matter Tristar argues that PMC's claim fails because "the Statute of Frauds . . . provides that a contract for the sale of goods for a price greater than $500 is not enforceable without some writing to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Siesta Sol, Inc. v Brooks Pharmacy, Inc., 617 F. Supp. 2d 38, 43 (D.R.I. 2007).  This rule, however, only applies to contracts for the sale of goods and does not apply to services contracts. Siesta Sol, 617 F. Supp. 2d at 51 ("the Statute of Frauds was inapplicable because the defendant's obligation was fundamentally not for the purchase of goods but for payment for [the plaintiff's] services") (internal quotations and citation omitted).

The documents and allegations contained in the First Amended Complaint indicate that this was primarily a contract

6

for services.   When a contract encompasses both services and goods, the First Circuit will apply the UCC provisions if the dominant purpose behind the contract reflects a sales transaction of goods.[6]   See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 17 (1st Cir. 1996).

PMC specializes in the application of various types of coatings to objects.   Moreover, the complaint alleges that Tamir contacted PMC in order to obtain quotes to have Plaintiff "provide gold plating and printing" on coins that would be supplied.   (Pl.'s Am. Compl. Ex. 1 Doc. 17-1.)   New Products, allegedly, was to supply the coins to Tristar, who would then ship them to Plaintiff to have finished.   Significantly, the coins were neither produced nor owned by Plaintiff, and title to the coins never passed between the parties.

Because this was not a contract for the sale of goods and PMC's role was limited to gold plating,[7] Tristar's argument that the UCC applies must be rejected; therefore, the Statute of Frauds does not mandate dismissal of Plaintiff's claims.

---

[6] A sale is defined as "the passing of title from the seller to the buyer for a price" and "goods" include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale."   R.I. Gen. Laws §§ 6A-2-105(1) and 2-106; ITT Corp. v. LTX Corp, 926 F.2d 1258, 1266 (1st Cir. 1991).

[7] The gold used to coat the coins and the boxes used for shipping are only incidental materials to the services that would be provided.

B.   Contract Formation

Next, Tristar contends that even if Tamir was an agent of Tristar, no contract formed for two reasons: (1) Tamir's email does not constitute a "definite and seasonable expression of acceptance," see Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 633 (R.I. 1998) (defining acceptance per the UCC in the context of a sale of goods contract); and (2) Tamir's alleged authority terminated once he breached the duty he owed to Tristar.

Tristar argues for a narrow characterization of PMC's allegations of contract formation, one that is limited to analyzing whether Tamir's email is valid acceptance.   But this constrained reading of the First Amended Complaint, in effect, asks the Court to draw inferences in favor of the Defendant, which, of course, the Court may not do.   "To form a valid contract, each party to the contract must have the intent to promise or be bound."   Smith v. Boyd, 553 A.2d 131, 133 (R.I. 1989) (citing J. Koury Steel Erectors, Inc. v. San-Vel Concrete Corp., 387 A.2d 694, 697 (R.I. 1978)).   In general, in determining whether a contract has been formed, this Court "shall look to an external interpretation of the party's or parties' intent as manifested by action."   Id.   "[S]o long as the evidence does not point unerringly in a single direction but is capable of supporting conflicting inferences, the question of

whether a contract has been formed between two parties is a question of fact to be determined by the factfinder." Crellin, 18 F.3d at 7 (applying Rhode Island law).

Simply put, the question of whether the parties conduct formed a contract cannot be resolved upon a motion to dismiss because there are plausible conflicting inferences that may be drawn from the alleged facts. Plaintiff claims that after receiving the price quotation, "Tamir accepted the contract, on behalf of Tristar." (Pl.'s Am. Compl. Doc. 17 ¶ 14.) Tristar is not altogether incorrect that one interpretation of the emails could support that the agreement between Tamir and PMC was limited to Tamir's commission. It is equally plausible, however, that Tamir accepted the full alleged contract once a revised PQ was sent, or that Tamir accepted the whole deal before the revised PQ, or perhaps even that Tamir counteroffered by adding the term that included his fee, which Sugerman accepted.[8]

At this juncture, the Court must accept all well-pled allegations as true, and Tamir's acceptance of the deal as

---

[8] Indeed, adding terms may still constitute acceptance or become a counteroffer depending on the circumstances. See Ardente v. Horan, 366 A.2d 162, 165 (R.I. 1976) ("An acceptance which is equivocal or upon condition or with a limitation is a counteroffer and requires acceptance by the original offeror before a contractual relationship can exist. However, an acceptance may be valid despite conditional language if the acceptance is clearly independent of the condition.") (internal quotations and citation omitted).

Defendant's agent, is one plausible interpretation.   Thus, Plaintiff has pushed its claim beyond the realm of mere speculation, alleging enough to survive Tristar's motion.

C.   Breach of Fiduciary Duty

In its renewed motion Tristar argues for the first time that no contract formed because Tamir breached his fiduciary duty when he negotiated a five percent fee for brokering the deal.[9]   In response, Plaintiff asserts that issues of authority, scope of authority, and whether a breach of fiduciary duty terminated the agency relationship, are all questions of fact, which cannot be determined on a motion to dismiss.[10]

The First Circuit has said that "affirmative defenses . . . may be raised in a motion to dismiss an action for failure to state a claim."   Blackstone Realty LLC v. F.D.I.C., 244 F.3d

---

[9]   Although Defendant hotly contests the allegation that Tamir is an agent of Tristar, as previously discussed the Court must accept all well-pled allegations as true.   Plaintiff sufficiently alleges the agency of Tamir in the First Amended Complaint.

[10] PMC also takes issue with Defendant raising a "new" ground for dismissal upon its "renewed" motion to dismiss, arguing that Defendant has acted "beyond the scope of this Court's directive."   (Pl.'s Supp. Mem. Doc 20 p. 3.)   The Court, however, disagrees that Tristar contravened its directive.   The Court permitted PMC to amend its pleading, and thereby offer new allegations in support of its claims.   Once the shape of the complaint changed, logically, so did the shape of Tristar's motion to dismiss.   There is nothing improper with Tristar offering a new argument after reading the new allegations in the First Amended Complaint.   This is especially true here, because PMC had ample opportunity to respond in its supplemental brief.

193, 197 (1st Cir. 2001) (citing Keene Lumber Co. v. Leventhal, 165 F.2d 815, 820 (1st Cir. 1948)).  Dismissal can be achieved for failure to state a claim on the basis of an affirmative defense; however, the facts establishing the defense "must be clear 'on the face of the plaintiff's pleadings[,]' [and] review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must 'leave no doubt' that the plaintiff's action is barred by the asserted defense."  Id. (internal citations omitted).

Tristar argues that before the alleged contract formed, Tamir forfeited his authority to act as Tristar's agent because Tamir breached his fiduciary duty by negotiating a five percent fee.  Tristar bears the burden of demonstrating that Tamir breached his fiduciary duty by negotiating the fee with Plaintiff.  See Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005) (movant bears burden with affirmative defense).

An agent who breaches his fiduciary duty loses his authority to bind the principal.  See Restatement (Second) of Agency § 112 (1958); Jerlyn Yacht Sales, Inc. v. Wayne R. Roman Yacht Brokerage, 950 F.2d 60 (1st Cir. 1991); Sokoloff v. Harriman Estates Dev. Corp., 754 N.E.2d 184 (N.Y. 2001).  Indeed, "the authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the

principal."   Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1125 (W.D. Wash. 2000) (quoting Restatement (Second) of Agency § 112 (1958)).

Tristar's argument is premature.   It is not clear on the face of the pleadings that Tamir's fee constitutes a breach of duty.   Tristar's reliance upon Twenty First Century LPI v. LaBianca, 19 F. Supp. 2d 35, 40-41 (E.D.N.Y. 1998) and the other cases cited in its brief, is misplaced.   The court in Twenty First Century was only able to conclude that a breach of fiduciary duty occurred upon the undisputed facts in the summary judgment record.   See id. at 38-39.   Moreover, in that case, the Court had an added benefit because the civil matter only moved forward after the criminal matter, arising from the same facts, was resolved.   Id. at 39.   Nothing on the face of the pleadings clearly indicates that a breach of fiduciary duty occurred here; therefore, Tristar has not met its burden for dismissal on the basis of its affirmative defense.

D.   Promissory and Equitable estoppel

The Court can quickly dispose of Tristar's final argument concerning promissory and equitable estoppel.   Defendant argues that Plaintiff fails to allege "any action . . . purposefully designed to induce PMC to act" and, therefore, has failed to allege reasonable or justifiable reliance.   The Court disagrees with this characterization of the First Amended Complaint.

12

Plaintiff has sufficiently alleged that it relied upon the representations made by Tristar's agents, Tamir and Mirchandani, and that a deal was struck where PMC was asked to act quickly. PMC further alleges it received telephone calls from Tamir and Mirchandani, and Tamir made further representations through email.  PMC also alleges that it relied upon the actions of Tamir and Mirchandani, who both met with Sugerman and toured the Plaintiff's plant in Rhode Island.  Therefore, Tristar's motion to dismiss Plaintiff's promissory and equitable estoppel claims must be denied.

IV.  Conclusion

For the reasons set forth above, Tristar's Motion to Dismiss is DENIED.


IT IS SO ORDERED:

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  June 11, 2010